**Opinion on Rehearing**



FILED

Jan 13 2021, 9:57 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Robert D. King, Jr.
David R. Thompson
The Law Office of Robert D. King, Jr.,
P.C.
Indianapolis, Indiana

ATTORNEY FOR APPELLEE
SOUTHSIDE ANIMAL SHELTER,
INC.

Laura S. Reed
Riley Bennett Egloff LLP
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

Brooke Brown, by next friend
Mark Brown,

*Appellant-Plaintiff,*

v.

Southside Animal Shelter, Inc.,
Humane Society of Clinton
County, Inc., and the City of
Indianapolis,

*Appellees-Defendants*

January 13, 2021

Court of Appeals Case No.
20A-CT-66

Appeal from the Marion Superior
Court

The Honorable Timothy Oakes,
Judge

Trial Court Cause No.
49D02-1704-CT-15339

**May, Judge.**

[1] On October 15, 2020, we held the trial court erred when it granted summary judgment because Southside Animal Shelter "had a duty to inform the Browns of Grieg's past bite history, and because there are issues of material fact

regarding whether Southside breached that duty[.]" *Brown by Brown v. Southside Animal Shelter, Inc.*, 2020 WL 6066649 at *5 (Ind. Ct. App. October 15, 2020). Southside requested rehearing, alleging our opinion did not address "the issues of the Release and the lack of evidence of fraud that entitle Southside to summary judgment even if it had a duty to the Browns[.]" (Appellant's Br. on Rehearing at 5.) While those issues were implicitly addressed when we held dispositive the legal issue of whether Southside could be held liable for Brooke's injuries, we grant rehearing to clarify our opinion and explicitly state that there exist issues of material fact regarding the matters raised in Southside's petition for rehearing. We reaffirm our original opinion in all respects.

[2] Southside's petition for rehearing first directs us to the release language in the adoption contract signed by Mark Brown when adopting Grieg. That contract states:

> The undersigned agrees that the health and history of this animal is unknown and for that reason the adopter releases the Southside Animal Shelter and all it's [sic] representatives from all liability, claims and damages should the animal become ill or die, and from any situations that may arise by reason of the animal's actions, toward the person or property of the adopter or any other person. The undersigned owner agrees that all further medical care and bill [sic] are their responsibility as of the signing of this agreement.

(Appellant's App. Vol. II at 115.) Southside claims there existed no fraud, but nonetheless, the language therein relieves "Southside from liability from situations arising from Grieg's actions." (Appellant's Br. on Rehearing at 6.)

However, we noted in our opinion that "there also remains a question of fact regarding whether Southside exercised reasonable care in ascertaining Grieg's behavioral history prior to allowing the Browns to adopt him." *Brown*, slip op. at *5.

[3] This determination about the actions taken, or not taken, by Southside prior to Mark signing the release directly relates to whether Southside misrepresented its knowledge regarding Grieg's history when reporting Grieg's history was "unknown" in the release. (Appellant's App. Vol. II at 115.) As Southside notes in its brief on rehearing, this is the only theory under which Mark can proceed with his fraud claim. There exist issues of material fact regarding the information communicated to Southside prior to Grieg's adoption.

[4] For example, Clinton County Humane Society ("CCHS") office manager Cassandra Tate testified in a deposition that she told Darcie Kurtz "the fact that [Grieg] did not get along with other dogs or small children" and "that there was a bite previously to a child, and that he was not to be with younger children." (*Id.* at 163.) Tate also testified that she gave Kurtz a "Behavior History Form" (*id.* at 204), which she summarized as saying, "[t]hat [Grieg] was not good with small children, that there was a previous bite history, and that he was not good with other dogs." (*Id.* at 176.) Southside contends it was first aware of Grieg's bite history on January 2, 2016, after Grieg bit Brooke because Indianapolis Animal Care and Control ("IACC") employee Julie Zink "looked up his microchip number" and told Southside owner Rosalyn Ellis that "he had been involved in biting a child in February of '15." (*Id.* at 68.) Ellis also testified at a

deposition that she did not "personally notice any signs of aggression of any nature" and that she would not "have adopted [Grieg] if [she] had known of his prior bite history[.]" (*Id.* at 69.)

[5] These questions of material fact are also related to the other issue Southside claims we did not address in our original opinion – the relationship between Kurtz and Southside, and whether that relationship means Kurtz's knowledge regarding Grieg can be imputed to Southside. As we noted in our original opinion:

> Southside contends Kurtz was not an employee or volunteer at the time of Grieg's arrival at Southside, and thus any information CCHS gave Kurtz could not be considered information given to Southside by virtue of Kurtz as Southside's agent. The Browns maintain Kurtz was a volunteer at Southside at the time relevant to this action.

*Brown*, slip op. at *5.

[6] Specifically, Southside owner Ellis testified that she, at one point in time, was "hired to manage the [Southside] shelter" and then Kurtz and another employee had "a falling-out" and Kurtz left. (Appellant's App. Vol. II at 59.) Ellis also testified, "Darcie Kurtz was not – during the week, the eight days that I had [Grieg] at the shelter, Darcie Kurtz did not work for me. Darcie Kurtz was working for the Low Cost Spay Neuter clinic in Brownsburg transporting animals back and forth to Clinton County for spays and neuters." (*Id.* at 61.) Brown points us to Tate's testimony that Kurtz "was working with Brownsburg Low Cost Spay Neuter" but that "she was affiliated with Southside as well."

(*Id*. at 163-4.)  When asked about Kurtz's relationship with Southside, Tate testified she "knew she had either worked or volunteered there."  (*Id*. at 164.)

[7]     As noted in our original opinion, these issues of material fact preclude summary judgment.  Having clarified the issues raised in Southside's petition for rehearing, we reaffirm our original opinion in all respects.

[8]     Riley, J., and Altice, J., concur.